In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-16-00436-CR
_____


MARK ADRIAN BARZAR, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 1
Montgomery County, Texas
Trial Cause No. 15-305268

MEMORANDUM OPINION

A jury convicted appellant, Mark Adrian Barzar, of the misdemeanor offense of driving while intoxicated ("DWI"). *See* Tex. Penal Code Ann. § 49.04(a) (West Supp. 2017). Barzar elected to have the trial court judge decide punishment; following a punishment hearing, the trial court sentenced Barzar to a 180-day sentence and ordered him to pay restitution of $500. In two appellate issues, Barzar

1

argues that: (1) the trial court erred by allowing the State's forensic scientist to suggest in Bazar's trial that the symptoms he exhibited on the day he was stopped were consistent with a history of ingesting Tramadol and synthetic marijuana when the State's other evidence failed to establish that the two substances were in his blood, found in his car, or found on his person that same day; and (2) the trial court erred by allowing a witness, the nurse that treated Barzar in the emergency room, to read a statement into evidence from Barzar's medical records indicating that his mother told the emergency room doctor that she suspected that Barzar had ingested something that day. We hold the trial court did not abuse its discretion by admitting the testimony of the State's forensic scientist. We further hold that Barzar did not properly preserve his complaint about the statement that is in the emergency room records for the purpose of appellate review.

## Background

Since the only issues Barzar raises in his appeal concern the admission of a small part of the testimony of the State's forensic scientist and of an emergency room nurse, we limit our discussion of the background to those facts needed to explain our resolution of Barzar's issues.

The evidence from Barzar's trial shows that the truck Barzar was driving sideswiped a passenger car while the vehicles were traveling in the northbound lanes

on Interstate Highway 45 in Montgomery County. Barzar stopped his truck on the shoulder of the highway after the collision occurred. Trooper Trace Turner, an employee of the Texas Department of Public Safety, was on routine patrol on February 8, 2015, when he was advised that a crash had occurred in one of the northbound lanes of traffic on Interstate 45.

Trooper Turner testified in Barzar's trial that shortly after he arrived on the scene where the crash had just occurred, he approached Barzar's truck and asked Barzar to tell him what happened. According to Trooper Turner, Barzar did not "really [understand] that he had even been in a crash." Trooper Turner explained that Barzar "could barely talk[,]" could not answer "[s]imple questions[,]" and that "[h]is speech was extremely slurred." Trooper Turner described Barzar's speech as "terrible[,]" and he stated that he feared Barzar might be having a stroke or a diabetic episode. Nonetheless, Barzar told Trooper Turner that he was not having any medical problems, and he denied that he had ingested any prescription drugs. When Trooper Turner asked Barzar for his license, Barzar dropped his wallet several times. Trooper Turner indicated that Barzar "had basically no use of his coordination with his hands[,]" he described Barzar as "very sluggish, very lethargic, having a very difficult time walking[,]" and as "extremely unsteady on his feet." Trooper Turner stated that he requested an ambulance so that Barzar could be taken to the hospital

3

for a more complete evaluation. According to Trooper Turner, he chose not to conduct any field sobriety tests on Barzar while they were on the shoulder of the interstate because he believed the tests could not be done safely.[1] After the ambulance picked Barzar up from the scene, Trooper Turner followed the ambulance to Memorial Hermann The Woodlands Hospital.

In issue one, Barzar complains that the trial court should not have admitted the testimony from the State's forensic scientist about the effects that synthetic marijuana and Tramadol can have on a person when the evidence admitted during the trial did not show that the police recovered those substances from Barzar's car, the substances were not found on Barzar, and the tests done on Barzar's blood and urine did not show that Tramadol or synthetic marijuana were in them. According to Barzar, "[w]ithout evidence of whether Barzar used synthetic marijuana or [T]ramadol, when Barzar might have used synthetic marijuana or [T]ramadol, or how much he might have used, the testimony of the nurse, the state trooper, and the forensic scientist" stating that Barzar admitted having ingested these substances was irrelevant and should not have been admitted.

---

[1] Trooper Turner also explained why he did not ask Barzar to perform a horizontal gaze nystagmus test after encountering him on the shoulder of the interstate. According to Trooper Turner, Barzar's pupils "appeared to be of different pupil sizes, which would disqualify him as a candidate for that [test.]"

4

We agree that the evidence admitted at trial did not show that the police recovered synthetic marijuana or Tramadol from Barzar's car or on his person. We also agree that the blood test and urine test performed on the samples that Barzar provided while at the hospital did not reveal whether synthetic marijuana or Tramadol were in Barzar's system. Nevertheless, there was also evidence that the blood and urine tests were not designed to detect Tramadol, and the blood test was also not designed to detect synthetic marijuana. The State's forensic scientist, Kiara Hagan, indicated that the testing she performed on the blood specimen in the Crime Lab was not designed to detect the presence of Tramadol or synthetic marijuana in a person's blood.[2] Hagan explained that while she had attempted to retrieve Barzar's blood specimen for further testing prior to Barzar's trial, Barzar's blood specimen was not kept because the test she performed on it had produced a negative result. During the trial, Codi Davis, one of the emergency room nurses who treated Barzar, testified that she was not surprised that Barzar's drug screen was negative because the urinalysis that was done did not test for the presence of Tramadol. Nurse Davis

---

[2] The urine sample that Barzar provided was tested by the hospital. The records from the hospital, which were admitted into evidence during the trial, include the results of Barzar's urine test. The information from the urine test reflects that the hospital screened the urine for the presence of drugs of various classes, including opiates and cannabis. The test does not indicate whether it was designed to determine if synthetic marijuana was present in the sample.

was not asked to explain whether the urine test was designed to detect the presence of synthetic marijuana.

While the record before the trial court does not show that Barzar had Tramadol and synthetic marijuana in his system, the evidence regarding the tests also does not show they were designed to rule out the presence of Tramadol and synthetic marijuana. Given Barzar's symptoms and his statements that he had ingested these substances, a reasonable jury could have determined that the fact he ingested the substances logically explained the unusual symptoms that he exhibited the day he was taken to the emergency room. For example, the jury heard the testimony of Nurse Davis that Barzar told her that he had taken Tramadol that day when she was treating him in the emergency room. Additionally, the jury heard Trooper Turner testify that Barzar told him at the hospital that he had "smoked synthetic marijuana around 5:00 or 6:00 a.m. that morning."[3]

---

[3] We note that Barzar did not object to Trooper Turner's testimony when it was admitted into evidence. However, the trial court had ruled in a hearing that occurred earlier that day that Trooper Turner would be allowed to testify regarding the statement he claimed that Barzar made to him while they were at the hospital. Trooper Turner also testified before the jury, without objection, that he thought Barzar was intoxicated when he saw him on the date of the alleged offense, February 8, 2015.

On the morning of the second day of the trial, the trial court conducted a hearing outside the presence of the jury, and at Barzar's request, to determine whether Hagan should be allowed to address the types of symptoms a person might exhibit after ingesting Tramadol and synthetic marijuana. *See* Tex. R. Evid. 702 (allowing a witness who is qualified by knowledge, skill, experience, training, or education to testify in the form of an opinion or otherwise if the specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue). At the conclusion of the hearing, the court indicated that it would allow Hagan to explain whether the types of symptoms that Barzar had reportedly exhibited on the day he was taken to the emergency room were consistent with ingesting Tramadol and smoking synthetic marijuana.

Barzar's appellate complaints also challenge the trial court's decision to allow Nurse Davis to testify from a note found in Barzar's medical records that indicates that Barzar's mother told emergency room staff that "[Barzar] does not sound or look like normal but suspects he ingested something." The records of Barzar's admission to the emergency room show that Barzar's mother was with him at the hospital. The transcript from Barzar's trial shows that Barzar's attorney did not specifically object to the nurse's testimony regarding the statement attributed to Barzar's mother on the basis that it was irrelevant; instead, Barzar's attorney

objected, as follows: "First of all, I renew my objection to another statement that is contained within these records. Second, the first page I just I think 403 it indicates a possibility of some kind of non-signed forms, refusal attempt." We have carefully reviewed the transcript from Barzar's trial, and nothing in it shows that Barzar's attorney lodged a specific prior objection to the mother's statement that is in the medical records on the basis that the statement was not relevant to the decision the jury was being asked to make in Barzar's trial.

## Standard of Review

We review Barzar's complaints about the admission of evidence under an abuse-of-discretion standard. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *see also Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). If the trial court's decision to admit the evidence being complained about on appeal was proper under any theory of law that applies to the case, its ruling will not be overturned. *See Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). To demonstrate that an error admitting evidence occurred, a party complaining of the trial court's ruling must establish that the ruling "was so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008).

8

Issue one

Barzar argues that without evidence of the quantity of the substances he ingested and evidence showing that the substances were in his body, the evidence before the jury indicating that he had taken Tramadol and smoked synthetic marijuana had no relevance to proving a fact of consequence—that he was guilty of driving his truck on the interstate while intoxicated. According to Barzar, the statements that he is alleged to have made to Trooper Turner and to Nurse Davis about smoking synthetic marijuana and taking Tramadol on the day of his crash were not relevant "when neither of those substances [were] detected in [his] blood specimen and neither was recovered" during the investigation conducted by the police. Additionally, Barzar contends that without scientific evidence proving that he took Tramadol and smoked synthetic marijuana, Hagan's testimony about the symptoms one might expect to observe in people who ingested these substances was unreliable when based solely on a person's symptoms.

Generally, evidence is admissible when it is relevant to the facts at issue in the dispute. *See* Tex. R. Evid. 402. Under Rule 401, evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Tex. R. Evid.

401. In this case, whether Barzar had taken drugs before driving his truck was one of the primary facts of consequence that were at issue in his trial.

The testimony in the trial establishes a direct logical connection between Barzar's admissions about taking Tramadol and smoking synthetic marijuana and his symptoms, as described by Trooper Turner and a witness who saw him driving his truck erratically. Hagan testified during Barzar's trial that Tramadol is accompanied by warnings that state a person should not drive while taking the medication. Hagan testified that the potential side effects of Tramadol include causing sleepiness, loss of motor coordination and balance, slowed reaction times, and slow judgment. She also testified that Tramadol can cause a person taking it to weave in and out of traffic. According to Hagan, Tramadol can affect a person for up to twelve hours after being taken.

Hagan also addressed the possible side effects of synthetic marijuana during Barzar's trial. According to Hagan, synthetic marijuana has a half-life of six hours, but causes effects for up to eight hours. Hagan explained that synthetic marijuana is a hallucinogen, and that its side effects include drowsiness, problems with balance, motor coordination, and reaction times. Hagan further explained that when taken in combination with Tramadol, synthetic marijuana can make Tramadol's effects even more pronounced.

10

Hagan testified that the various symptoms that Barzar reportedly exhibited were consistent with his statement that he took Tramadol and smoked synthetic marijuana. On cross-examination, Hagan agreed that the test she performed on Barzar's blood sample at the Crime Lab had been negative. She also stated that she could not definitively say whether Barzar had been influenced by a specific drug without having a test result showing that he had a specific drug in his system. And, Hagan agreed that she could not rule out the possibility that the symptoms that Barzar had exhibited on the day he was taken to the emergency room were caused by something other than Tramadol and synthetic marijuana.

While Barzar argues that there was not proof regarding the amounts of Tramadol and synthetic marijuana that he ingested, the State was not required to prove that Barzar had ingested a certain number of pills or smoked a specified amount of synthetic marijuana to prove him guilty of driving while intoxicated. *See* Tex. Penal Code Ann. § 49.01(2) (West 2011) (defining "intoxicated" to include "not having the normal use of mental or physical faculties" separately from the per se section of the definition, which allows proof of intoxication by proving that the person has "an alcohol concentration of .08 or more"). In this case, the State relied on the evidence that was relevant to proving that Barzar had lost the normal use of his faculties, suggesting in closing argument that the jury should find Barzar guilty

of driving while intoxicated. It did not rely on the per se part of the definition of the term "intoxicated" in closing argument, even though that part of the definition was also included in the charge. The testimony the jury was asked to consider included the evidence that Barzar admitted that he had smoked synthetic marijuana and had taken Tramadol the morning that he was seen driving erratically, that Barzar's truck was seen weaving in and out of traffic, and that his truck sideswiped at least one car while he was traveling on Interstate 45.

While Barzar suggests that the evidence before the jury did not necessarily tie his symptoms to ingesting Tramadol and synthetic marijuana, neither the medical records, nor the nurse's testimony, indicates that an injury from a collision or a medical condition unassociated with ingesting drugs explained Barzar's symptoms immediately before and after he was taken to the emergency room. For example, the CT scans in the medical records, which were done on Barzar's brain and cervical spine, were both normal. He also had a normal chest x-ray, and he was discharged from the emergency room around 2:30 p.m. on the afternoon of February 8, 2015, with a diagnosis of suffering from an altered mental status.[4] Nevertheless, the fact

_____

[4] The discharge summary defines "altered mental status" as a term that "most often refers to an abnormal change in your responsiveness and awareness. It can affect your speech, thought, mobility, memory, attention span, or alertness. It can range from slight confusion to complete unresponsiveness (*coma*). Altered mental status can be a sign of a serious underlying medical condition. Rapid evaluation and

the State failed to produce direct scientific evidence or introduce evidence showing that Barzar was found to be in possession of Tramadol or synthetic marijuana does not mean that Barzar's admission that he took Tramadol and synthetic marijuana the morning before he was seen in the emergency room is not a circumstance relevant to whether Barzar's admitted use of these substances explained his symptoms. It was not incumbent upon the State to exclude "every reasonable hypothesis other than guilt" before the jury could reasonably link Barzar's use of these two substances to his symptoms. *See Geesa v. State*, 820 S.W.2d 154, 159-61 (Tex. Crim. App. 1991) (overruled on other grounds by *Paulson v. State*, 28 S.W.3d 570, 571 (Tex. Crim. App. 2000)).

In conclusion, Hagan's testimony about the types of symptoms that could result from a person's ingestion of Tramadol and synthetic marijuana offered the jury a logical explanation connecting Barzar's admitted ingestion of these substances with his abnormal behavior. In our opinion, even though Barzar's specimens were not subjected to the types of tests designed to detect the presence of Tramadol and synthetic marijuana, the testimony in the record showing what type of symptoms these substances can cause was circumstantial evidence that the trial court could

medical treatment is necessary for patients having an altered mental status." The summary then lists thirteen potential causes, one of which includes "[a] drug or alcohol overdose."

13

reasonably determine was relevant to the question of whether the jury would find Hagan's testimony helpful in determining whether Barzar had lost the normal use of his faculties due to ingesting Tramadol and synthetic marijuana. *Compare Ouellette v. State*, 353 S.W.3d 868, 870 (Tex. Crim. App. 2011) (explaining that when the drug the police found in the defendant's vehicle "could have produced the observed symptoms of intoxication," that a "rational juror could have found that the defendant [consumed the drug]" even without direct evidence that she did so), *with Layton v. State*, 280 S.W.3d 235, 242 (Tex. Crim. App. 2009) (holding the trial court erred in allowing evidence of the defendant's use of Xanax and Valium into evidence to show intoxication absent testimony from an expert explaining the effect of combining the medications with alcohol).

The jury charge used in Barzar's case defined the term "intoxicated" as including the loss of normal use of a person's mental or physical faculties by reason of the introduction of a controlled substance, a drug, a dangerous drug, or a combination of two or more of them into the body." When considered as a whole, the evidence that was before the jury allowed the trial court to exercise its discretion to admit Hagan's testimony regarding the possible side effects of Tramadol and synthetic marijuana. *See* Tex. R. Evid. 401; Tex. R. Evid. 702. We overrule issue one.

14

In issue two, Barzar argues that the trial court erred by "admitting Barzar's mother's hearsay statements that are in Barzar's medical records." During the trial, the prosecutor asked Nurse Davis to read from a clinical note that is included in Barzar's medical records, which had already been admitted into evidence. When Nurse Davis read the clinical note, she indicated that it states: "Mother reports [Barzar] doesn't sound or look like normal, suspects he ingested something." Barzar argues that Nurse Davis should not have been allowed to read this statement into evidence, and he claims the statement should have been redacted from Barzar's medical records before the records were admitted during his trial. According to Barzar, the statement at issue is inadmissible hearsay, and he argues that the statement does not fall within any of the exceptions to the rule prohibiting the admission of testimony constituting hearsay.

However, nowhere in the record do we find where Barzar objected to the admission of the statement the emergency room records attribute to Barzar's mother on the basis that the statement was inadmissible hearsay, or that he objected to Nurse Davis's testimony about the statement on the basis that the statement was hearsay. Under Texas law, "to preserve an issue for appeal, a timely objection must be made that states the specific ground of objection, if the specific ground was not apparent

from the context." *Douds v. State*, 472 S.W.3d 670, 674 (Tex. Crim. App. 2015); *see also* Tex. R. App. P. 33.1(a). Under the rules of procedure that govern error preservation, "the record must show that . . . the complaint was made to the trial court by a timely request, objection, or motion" stating the grounds for the ruling sought "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context[.]" Tex. R. App. P. 33.1(a). The specific objection must be timely to (1) inform the trial judge of the basis of the objection to afford him an opportunity to rule on it, and (2) allow opposing counsel an opportunity to respond to the complaint. *See Douds*, 472 S.W.3d at 674. With respect to specificity, "all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Id.* (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)).

"A complaint is timely if it is made 'as soon as the ground of objection becomes apparent.'" *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011) (quoting *Hollins v. State*, 805 S.W.2d 475, 476 (Tex. Crim. App. 1991)); *see also Lackey v. State*, 364 S.W.3d 837, 843 (Tex. Crim. App. 2012) (explaining the

16

policies underlying the contemporaneous objection rule). To be sufficiently specific, "the objection must simply be clear enough to provide the judge and the opposing party an opportunity to address and, if necessary, correct the purported error." *Pena*, 353 S.W.3d at 807 (citing *Ford v. State*, 305 S.W.3d 530, 533 (Tex. Crim. App. 2009)). In deciding whether the context in which the objection occurred preserved the error being claimed on appeal, we consider the defendant's objection "in the context in which the complaint was made and the parties' shared understanding of the complaint at that time." *Id.* (citing *Lankston*, 827 S.W.2d at 911).

The objection that Barzar's attorney made during the trial failed to alert the trial court that he was objecting to the statement that Barzar's medical records attribute to Barzar's mother. His objection also did not alert the trial court that he was objecting to Nurse Davis reading the statement on the basis that it was inadmissible under any of the exceptions to the hearsay rule found in Rule 803(4). *See* Tex. R. Evid. 803(4) (exception to hearsay rule that generally gives the trial court the discretion to admit statements that are made for a person's medical diagnosis or treatment).

We hold that the general objection that Barzar made renewing a prior objection that is not found in the record failed to identify the objection that he seeks to raise about Nurse Davis's testimony for the first time in his appeal. *See* Tex. R.

App. P. 33.1(a). We hold that Barzar waived his right to obtain appellate review regarding the argument he makes in support of his second issue.

Conclusion

Because Barzar has not shown that the trial court committed reversible error, we affirm the trial court's judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on March 13, 2018
Opinion Delivered July 25, 2018
Do Not Publish

Before, Kreger, Horton and Johnson JJ.

18